[S. F. No. 834. Department Two.—December 22, 1898.]

CATHERINE SLEVIN, Respondent, v. BOARD OF POLICE FUND COMMISSIONERS OF THE CITY AND COUNTY OF SAN FRANCISCO, Appellants.

STATUTORY CONSTRUCTION — POLICE INSURANCE FUND — DEATH "FROM NATURAL CAUSES"— RAILROAD ACCIDENT.— Under section 7 of the act of March 4, 1889, providing for the payment of one thousand dollars from the police insurance fund to the widow of a policeman, who shall after ten years of service die "from natural causes," the widow of a policeman who is killed in a railroad accident is not entitled to such payment. Death of a person "from natural causes" imports that the person who died therefrom was not killed, or did not die through external violence or human agency, but that the death occurred from disease, or from the unassisted operation of natural causes.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Harry T. Creswell, for Appellants.

W. W. Foote, for Respondent.

Alfred Clarke, *Amicus Curiae*, for Respondent.

TEMPLE, J.—The superior court by its judgment awarded to plaintiff a writ of mandate to compel the defendant to audit and allow the claim of respondent, as the widow of Patrick Slevin, for one thousand dollars, as insurance upon the life of said Patrick Slevin. It is contended that the findings do not support the judgment.

By the findings it is shown that Slevin became a member of the police department April 1, 1868, and served until September 23, 1889, when, at his own request, he was retired upon a pension under an act of the legislature passed March 4, 1889.

The act provides that a member of the department, after twenty years' service, and he has reached the age of sixty years, and his services in the police department shall have ceased, may be retired on a pension.

It is found that Patrick Slevin died on the sixth day of March, 1895, and "that said death was the result of injuries received in a railroad accident two days previous thereto."

Section 7 of the act under which the claim is made reads as follows: "Whenever any member of the police department of such county, city and county, city or town shall, after ten years of service, die from natural causes, then his widow or children, or, if there be no widow or children, then his mother or unmarried sisters, shall be entitled to the sum of one thousand dollars from such fund."

It is contended that Slevin did not die from natural causes, and therefore, under the terms of the act, his widow is not entitled to the insurance.

What is meant by the phrase "shall die from natural causes"? It is not an uncommon colloquial expression, and I think uniformly means that the person who died from natural causes was not killed. To say that one died from natural causes is to say that he was not killed; that is, he did not die through external violence or through human agency. I do not think any persons who are proficient in the use of the English language would understand the expression differently. If in response to the question: "Was he killed?" the reply was, "He died from natural causes," we would be at no loss for the meaning of the reply. So if the statement were made in a military report that a certain number died from natural causes, the meaning would be clear. Nor are we without authority. In Bouvier's Dictionary, Rowles' Revision, verb "death," it is said: "Natural death is the cessation of life. It is also used to denote a death which occurs by the unassisted operation of natural causes, as distinguished from a violent death, one caused or accelerated by the interference of human agency." Black's Law Dictionary, phrase "Natural Death": "Death resulting from disease, or from natural forces, without the concurrence of man's agency, as distinguished from violent death": See, also, Webster's Dictionary, verb "Natural."

But it is said that the usual and ordinary meaning of the words leads to absurd results and the limitation is unreasonable. I confess it is difficult to understand why this particular limitation was imposed, but to give the language its ordinary meaning does not lead to absurd results, and I do not see how, without

doing violence to the language, any other meaning than that well established by usage can be given it.

An attempt might be made to make this provision in section 7 the complement of section 6, which provides for a pension to the widow of the officer who loses his life while in the performance of his duty as an officer. This is undoubtedly a provision for the case of a violent death. But one provision cannot be the complement of the other, for there is an additional requirement in section 7. The officer must have served ten years.

Nor can it be held to provide against the case of suicide. There is nothing in the law to indicate such intention, and it is absurd to say that one who dies from wounds inflicted by an assassin dies from natural causes, while if the same fatal injuries had been inflicted by himself his death would not have resulted from natural causes.

Although unable to understand the reasons which induced the legislature to dispose of the funds in this mode, I see no way to avoid the conclusion that such is the law.

The judgment is reversed.

McFarland, J., and Henshaw, J., concurred.