Day, J.
 

 The question presented for our determination is whether decedent was wounded “while in the
 
 *53
 
 performance of his duty” within the meaning of Section 44 (A) of the rules and regulations of the Board of Trustees of the Police Belief Fund of the city of Cincinnati. If the question is answered in the affirmative the widow and minor children are entitled to share in the pension fund; otherwise not.
 

 Determination of the question therefore resolves itself into one of construction of the phrase “while in the performance of his duty” as contained in Section 44 (A) of the rules and regulations governing the right to pensions.
 

 The record discloses the existence of a standing departmental order requiring police officers to keep and maintain their service revolvers in good condition at all times; that arms inspection is conducted at the district station three times daily, once for each of the three shifts as they report for duty; that police officers are required to carry their service revolvers with them at all times; that-there was no rule or order prescribing a definite time or place for cleaning service revolvers or the frequency with which they were to be cleaned, beyond the standing requirement that police officers keep their service revolvers in good condition constantly; that there was no prohibition against police officers cleaning their service revolvers in their own homes when not on active duty; that, except after target practice, it had been the custom of the majority of the police officers'to clean their service revolvers in their own homes when not on active duty, of which fact their superior officers had full knowledge; that there were some officers who at times cleaned their revolvers at the police station; that some cleaned their revolvers once in six weeks, others once in three months, and still others once in six months; that moisture, dust particles, lint or other foreign substances frequently deposit themselves upon the service re
 
 *54
 
 volvers and, unless promptly removed, often interfere with effective use of the weapon.
 

 The condition precedent imposed upon the rights of a widow and children of a deceased police officer to pension under the rules and regulations of the Police Relief Fund of the city of Cincinnati is that the decedent must have died from the effects of wounds received “while in the performance of his duty.”
 

 To determine whether decedent received his fatal injuries “while in the performance of his duty” it is first necessary to ascertain whether the cleaning of his service revolver constitutes an act of duty, and if it does, whether performance of it in his own home, when not on active duty,-under the facts and circumstances of this case, still constitutes performance of duty, or strips it of that characterization.
 

 Rule 44 (A) of the Rules and Regulations of the Board of Trustees of the Police Relief Fund of the city of Cincinnati provides: “ If a member of the division of police, department of safety, while in the performance of his duty, be killed or die from the effects of the wounds, so received, his widow, child or children, who was living with said member at the time of his death, shall receive a pension as provided for in paragraph (C) of this rule. The provisions of this rule shall be effective, without regard to length of service.”
 

 The term “duty” is employed in the above rule in its generic sense. It embraces all manner of duty imposed upon a police officer, independent of the question of time, place or manner of performance, no exception or limitation in that respect having been made therein. It includes all required police activities, whether performed on the policeman’s beat, at the police station, or elsewhere, whether while on active tour of duty or not, and whether carefully or negligently performed.
 
 *55
 
 The contention that the phrase “while in the performance of his duty” contemplates injury or death suffered while “in action” is not convincing. The rule neither so states nor so implies. To thus hold would necessitate the engraftment of an exception to the rule where no exception was clearly intended. Injury or death sustained while “in action” is of course pensionable; but it is not the all-inclusive pensionable cause. The phrase “while in the performance of his duty” is much broader in scope than the phrase “while in action.” The latter is included in the former as a part is included in the whole. The two are not equal to- one another. One may be engaged in the performance of a duty without necessarily being “in action.”
 

 A police officer who does an act which, by standing department rule or order heN is under' obligation to do, is engaged in the performance of his duty. Attention to duty should never operate to deprive one of his legal rights.
 

 Decedent, in undertaking to clean his service revolver, acted in accordance with a standing departmental rule imposing upon all police officers the duty to constantly keep their service revolvers in good condition. Cleaning of service revolvers is an act of duty, its performance exacted by daily inspection, and its non-performance punished by reprimand. It is a police officer’s duty, in the first instance, to ascertain its condition for himself without waiting for his superior officer to call his attention thereto. It is his own responsibility. To wait is not only to invite reprimand but is fraught with danger. A police officer is a soldier of peace. Society relies upon him to preserve law and order. Without additional compensation, in event of an emergency, he is withdrawn from home and safety in order to protect the life, liberty and property of the public. In the performance of his duty, quick use of
 
 *56
 
 his firearm may become necessary. Safety lies in complete readiness which comes from a firearm kept clean.
 

 Appellants argue that decedent’s revolver was clean and required no attention on that particular evening. We are referred to the testimony of some police officers to the effect that frequent servicing was unnecessary and that decedent’s weapon had passed inspection that very morning. Up to the time of inspection the question whether or not the service revolver needs to be cleaned is one of fact left for the individual police officer to determine. To argue that decedent’s weapon was in good condition and required no attention that evening from the mere fact that much time had not elapsed since it was last cleaned and that normally a revolver requires no more frequent cleaning than once in six weeks or once in six months, is to argue a supposition against a fact. Experience teaches that “what ought to be” is not always in accord with “what is.” Who can say what may have transpired since the weapon was last cleaned or inspected to render it unclean? Who is to judge the need for its care if not the very police officer who is charged with its care? Up to the time of inspection its condition must, of necessity, be, as' it is, left to be determined by the police officer. In the judgment of decedent his service revolver required care. It is his judgment in the matter which must be accepted as a fact and be made to' control. The speculation of others cannot be permitted to replace his judgment. We indulge in the presumption that decedent did not undertake to perform a vain act and undertook to clean his firearm because in his judgment its condition required it.
 

 With respect to the frequency with which revolvers may be cleaned, suffice it to say that if servicing, at definite intervals, were self-sufficient, there would indeed be no occasion for the police department to conduct daily inspection. Daily inspection is significant in that it is indicative of the imperativeness of a po
 
 *57
 
 liceman’s constant and never-ceasing duty with respect to the care he is required to give to his firearm. Were there no such duty imposed, reprimand, which follows discovery of an unclean condition of a firearm, would not be administered. Reprimand implies neglect of duty, performance of which must precede inspection. Inspection is conducted when the officer reports for active duty. The necessary inference to be drawn from this fact is that the officer must condition his firearm before reporting for duty. This means when not on active duty.
 

 The duty to keep a service revolver clean is a police duty. It must be cleaned by the officer himself. He cannot delegate the task. Being required to be in possession of his service revolver at all times, he cannot surrender it to another. The place of performance of this task is immaterial. There is no departmental rule or order specifying that service revolvers must be cleaned only at the station. The record discloses that, except after target practice, no cleaning facilities are provided at the station. Officers generally, the record discloses, clean their guns at home.
 

 A police officer who, while attempting to clean his service revolver at home, when not on active duty, and in compliance with a standing police departmental rule requiring police officers constantly to maintain their service revolvers in good condition, accidently shoots himself and dies as' a result thereof, sustains such fatal injury while in the performance of his duty, within the meaning of a rule governing the distribution of a police pension fund, which rule provides for the payment of pensions to widows and children of police officers who die as a result of injuries sustained while in the performance of duty.
 

 Pension provisions' must receive liberal interpretation, and ambiguities and uncertainties must be resolved in favor of those to be benefited thereunder.
 

 “Like other pension laws, pension acts applicable
 
 *58
 
 to members of the police force will be liberally construed.” 43 Corpus Juris, 813, Section 1408(b);
 
 O’ Dea
 
 v.
 
 Cook,
 
 176 Cal., 659, 169 P., 366.
 

 Appellant refers us to the case of
 
 McAuliffe
 
 v.
 
 Board of Trustees of the Police Pension Fund
 
 (Ky. 1909), 115 S. W., 808, wherein pension was denied.dependents of a deceased police officer who shot himself while cleaning his service revolver. The decision in that case was grounded, as counsel for appellee point out, on the fact that death resulted from the policeman’s own negligence. However, the regulations awarding pension in event of injury resulting in death do not, in the instant case, provide for denial of pension in the event an officer receives fatal injuries due to his own negligence. In the case at bar the sole test is performance of duty and not care or lack of care in its performance.
 

 Judgment affirmed.
 

 Weygandt, C. J., Stephenson, Williams, Matthias and Zimmerman, JJ., concur.
 

 Jones, J., not participating.