Williams, J.
 

 The power of the trustees of the police relief fund to make rules and regulations is derived from Section 4628, General Cpde, which reads thus:
 

 “Such trustees shall make all rules and regulations for distribution of the fund, including the qualifications of those to whom any portion of the fund shall be paid, and the amount thereof, with power also to give credit for prior continuous actual service in the fire department or in any other department of the city rendering service in fire prevention, but, no rules or regulations shall be in force until approved by a majority of the board of trustees.”
 

 It was in the exercise of power conferred by that statute, that the trustees adopted rule 43(c), the pertinent part of which, in its original form, reads as follows:
 

 “Section 43(c). Once each year during the first five years following retirement of a member on a pension for disability and once in every three-year period thereafter, the board may require any disability beneficiary who has not yet attained age sixty or who did not complete 25 years of service before retirement to undergo a medical examination, such examination to be made by the police surgeon at a place mutually agreed upon. Should such disability beneficiary refuse to submit to at least one medical examination in any year his allowance may be discontinued until his withdrawal of such refusal, and should his refusal continue for one year, all his rights in and to his pension may be revoked by the board.
 

 ‘ ‘ Should such disability beneficiary engage in a profitable occupation, or should the police surgeon certify
 
 *110
 
 that he is able to engage in such an occupation, the pension under these rules shall be subject to deduction as follows:
 

 “ (1) If the average monthly total of the pension allowance plus the amount earned or earnable does not exceed one hundred and seventy-five ($175) dollars, no deduction shall be made.
 

 “(2) If the average monthly total exceeds one hundred and seventy-five dollars ($175), but does not exceed the monthly salary payable to the pensioner at the time of retirement, no deduction shall be made.
 

 “(3) If the average monthly total exceeds one hundred and seventy-five dollars ($175) and also exceeds the monthly salary at retirement, the monthly pension shall be reduced to a sum which when added to the average amount earned or earnable per month, shall produce a total income equal either to one hundred and seventy-five ($175) dollars, or to the monthly salary received at retirement, whichever is greater.
 

 “Should his earning capacity be later changed, the amount of his pension shall be further modified in like manner.”
 

 Relator’s counsel contend that rule 43(c) is “utterly capricious, arbitrary and unlawful and against public policy,” and to maintain their position point to certain claimed discriminations concerning which we will now make inquiry.
 

 Is such rule invalid by reason of discriminations (1) between beneficiaries pensioned before the effective .date of the vested-interest statute (Section
 
 4628-1,
 
 General Code) and beneficiaries pensioned after that date and before the date the rule became effective, (2) between earned or earnable income and any other income, and (3) between disability beneficiaries and length-of-service beneficiaries or other beneficiaries?
 

 Rule 43(c) as amended January 31, 1944, eliminates
 
 *111
 
 the so-called discrimination between disability pensioners and length-of-serviee pensioners. By the amendment of the rule its provisions were made to apply to all pensioners under the age of sixty instead of disability pensioners only and one of the claimed vices was removed. No other change was effectuated by the amendment. Consequently, if the rule was valid in its original form it is likewise valid in its amended form.
 

 Prior to the enactment of the vested-interest, statute, Section 4628:1, General Code (effective May 26, 1937), a pension was a mere gratuity and could be raised or lowered by the adoption of a rule by the trustees of the police relief fund, provided the action taken was “reasonable and not arbitrary.”
 
 Mell et al., Trustees,
 
 v.
 
 State, ex rel. Fritz,
 
 130 Ohio St., 306, 199 N. E., 72.
 

 Section 4628-1, General Code, provides as follows:
 

 “The granting of a pension to any person hereafter pursuant to the rules adopted by the trustees shall operate to vest a right in such person, so long as he shall remain the beneficiary of such pension fund, to receive such pension at the rate so fixed at the time of granting such pension.”
 

 A pension, granted after the statute took effect, is vested insofar as the power of the trustees is concerned. The provision deprives the trustees of power to take away or impair the right to a subsequently granted pension but does not affect the trustees’ right to pass rules altering pensions previously granted.
 

 It cannot be denied that there are now two classes of pensioners, those whose pensions are gratuitous and those whose pensions are vested. This classification or distinction was created not by the rule but by the enactment of the vested-interest statute. Previous
 
 *112
 
 to its adoption certain pension rights were outstanding and subsisting, but subject to change by rule. It was not an unreasonable or arbitrary exercise of legislative power to restrict the authority of the trustees as to pensions thereafter granted by them, without altering their power as to pensions previously granted. Such a classification does not exceed constitutional limitations. The statute being valid, the .rule is not invalid on this ground.
 

 The rule does make a distinction between earned or earnable income and other income, in that a pensioned member may have an income from investments and still retain his pension unaffected. As to such private income the rule is silent. But even though the pensioner has private income, he suffers a deduce tion from his pension if he accepts employment at wages or salary. All similarly situated as to employment are treated alike and therefore the distinction is reasonable and justifiable.
 

 The rule in its original' form made specified deductions applicable to “any disability beneficiary who has not yet attained age sixty or who did not complete 25 years of service before retirement” and contained no provision by which length-of-service pensioners were made subject to such deductions. Although the rule as amended January 31, 1944, eliminates this distinction as hereinbefore stated, attention must be directed to the rule as in force when relator’s name was removed from the pension roll. What reason was there for the distinction? The Court of Appeals in its opinion answered the query in this way:
 

 “It is said that the distinction between ‘disability’ and ‘length of service’ beneficiaries is arbitrary and unreasonable and furnishes no valid basis for classification. However, it is manifest that there is a distinction. A disability beneficiary is usually much
 
 *113
 
 younger than a beneficiary because of length of service. The chances of a disability pensioner’s general physical condition being such as to permit him to work is much greater. The fact that there is no mathematically precise line that can be drawn between the tWb classes is no justification for judicial invalidation of a practical line drawn by the board of trustees.”
 

 This court concludes that there was a factual basis for the distinction and that the original rule was not unreasonable or arbitrary in that it applied only to such disability pensioners.
 

 The relator makes the additional objection to rule 43(c), that it is invalid in conferring upon the police surgeon power to make an examination and a certification as to a disability pensioner’s ability to engage in a profitable occupation. The foundation of relator’s position is stated thus in his brief:
 

 “The board sets out an exclusive and definite method of determining the amount of ‘earned or earnable income.’ It is provided that the police surgeon upon examination shall certify whether or not the beneficiary is able to engage in a profitable occupation, and by inference determines the amount of ‘earnable income.’ ”
 

 There may be some doubt whether a pensioner other than the one. who suffers a deduction by reason of the police surgeon’s certification may raise this particular question. Be that as it may we feel that the objection should be met squarely. It is evident that the rule would be ineffective to accomplish its purpose if applied only to those who go to work voluntarily. The purpose sought was to require pensioners to earn their own living so far as they are able, when suitable work is available.
 

 So examination is required and a pension is made
 
 *114
 
 subject to deduction as to earnable as well as earned income. The final determination as to whether the pension is factually and under the rule “subject to deduction” lies with the trustees. The wisdom of a given rule is not a matter for this court; but the power of the board to adopt a rule, which requires a recipient of a gratuitous pension to go to work, if able, or submit to proper deductions, cannot be denied.
 

 In the case of
 
 State, ex rel. Carroll,
 
 v.
 
 McCarthy,
 
 139 Ohio St., 654, 41 N. E. (2d), 863, decided after the effective date of the vested-interest statute, this court, in passing upon the right of the board of trustees of fireman’s pension fund to suspend a fireman’s pension during the time he .received salary as a chief of the fire department in another municipality in the same county, used this language:
 

 “There is no doubt of the power of the board to change by rule a gratuitous pension so as to suspend its payment during the time the pensioner is holding another position, the salary of which is paid from funds raised by taxation.”
 

 The relator contends that principle should not be extended ¿o comprehend income paid from private funds. Logically there is no distinction between earned income paid from the public treasury and that paid from other sources, so far as the validity of the rule is concerned.
 

 Rule 43(c) is not capricious, arbitrary, unlawful or against public policy, and is a valid and subsisting administrative provision.
 

 The judgment of the Court of Appeals is therefore affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Zimmerman,' Turner and Hart, JJ., concur.
 

 ■ Belt, and Matthias, JJ., dissent.