Middleton, J.
The only error assigned in this court is that the Court of Appeals erred in affirming the judgments of the Court of Common Pleas allowing the writs of mandamus.
Three principal questions are debated. They are the significance of the statutes which became effective May 26,1937, commonly referred to as the vested right statutes; the effect of the comprehensive revision of the pennon laws effected by the statutes enacted in 1947, and the right of the relators in any event to relief in mandamus.
In February 1937 the General Assembly enacted Section 4612-1, General Code (117 Ohio Laws, 29), relating to the firemen’s fund, and Section 4628-1 (117 Ohio Laws, 31), relating to the police fund, in identical language, both enactments becoming effective May 26, 1937. Those sections read:
“The granting of a pension to any person hereafter pursuant to the rules adopted by the trustees shall operate to vest a right in such person, so long as he shall remain the beneficiary of such pension fund, to receive such pension at the rate so fixed at the time of granting such pension.”
It can not be doubted that these enactments created vested rights in both firemen and policemen, who were placed on the pension rolls subsequent to May 26,1937, to receive the amounts fixed by their respective boards as of the dates they became pensioners, in the absence of change of the rules and regulations adopted by such boards pursuant to powers in them vested. It is not claimed that while the rule-making power was still vested in the boards any change in the rules or regulations was made which would affect the rights of either firemen or policemen then on the pension rolls. As will be hereinafter noted, the power to determine the amount of pensions and the qualifications to receive *48 pensions existed in the trustees until the Act of 1947 (122 Ohio Laws, 613) but not thereafter. As to pensioners or beneficiaries who became such subsequent to May 26,1937, it is clear that their rights were vested.
What then were the rights of those who were placed on the pension rolls prior to May 26, 1937? Their rights can not be considered as having been vested by reason of the 1937 legislation, in view of the language therein specifically limiting those enactments to “the granting of a pension to any person hereafter. ’ ’ However, we are constrained to hold that the vesting of the rights of that group of pensioners or beneficiaries is not contingent upon the provisions of the Acts of 1937 (117 Ohio Laws, 29 and 31) and the vesting of such rights was not affected by failure to include that group within the terms of those acts.
Those placed on the pension rolls prior to May 26, 1937, were so placed pursuant to rules and regulations legally adopted by the respective trustees. The power of the trustees to change those rules and regulations as they would affect such pensioners or beneficiaries was never exercised prior to the termination of such authority in 1947. Even though, in the absence of statutory provisions to the contrary, pensions may be considered a gratuity and subject to revision or revocation by the trustees under their rule-making power, as to the future, such action by the trustees was not taken.
It is a general fundamental rule that pension statutes are to be liberally construed. 40 American Jurisprudence, 963, Section 4; 62 Corpus Juris Secundum, 1269, Section 614; 70 Corpus Juris Secundum, 425, Section 2. This court approves that rule of construction. See State, ex rel. Schoedinger, v. Lentz, 132 Ohio St., 50, 57, 5 N. E. (2d), 167.
The problem of vested interests in pensions has received the attention of many courts over a long period *49 of years. There are several exhaustive annotations upon this subject in A. L. R. The one appearing in 54 A. L. R., 943, states the general rule that there is no vested right to a gratuitous pension, but at page 945 it is stated:
“It is, however, conceded that where any particular payment .under a pension has become due, the pensioner has a vested right therein.”
The above-quoted statement is repeated in 98 A. L. R., 505, 507, and in 112 A. L. R., 1009, 1010.
In 137 A. L. R., 249, 255, the vesting of rights as to accrued installments is recognized in the following language:
“It is probably true that no court would question that where a particular instalment of a pension has accrued there is a vested right in the pensioner to that instalment. ’ ’
In 40 American Jurisprudence, 981, Pensions, Section 24, the following statement appears:
“And it is a strongly supported rule that where any particular payment under a pension has become due the pensioner has a vested right thereto.”
These vested rights of pensioners are recognized in 3 McQuillin, Municipal Corporations (3 Ed.), 516, Section 12.144, as follows:
“If a pension law is unrepealed, the right of one who has satisfied all of the requirements for a pension is vested in the sense that he has established a right which the law will protect, and of which he may not be deprived by the arbitrary action of an administrative body or officer.”
Decisions of this court are consistent with the statements hereinabove set forth. See State, ex rel. Little, v. Carter, 111 Ohio St., 526, 146 N. E., 56; State, ex rel. Dieckroegger, v. Conners, 122 Ohio St., 359, 171 N. E., 586; State, ex rel. Eden, v. Kundts et al., Boards of Trustees, 127 Ohio St., 276, 188 N. E., 9; State, ex rel. *50 White, Gdn., v. City of Cleveland, 135 Ohio St., 13, 18 N. E. (2d), 807.
The respondents herein can not rely on the case of State, ex rel. Lemperle, v. McIntosh et al., Trustees, 145 Ohio St., 107, 60 N. E. (2d), 786. In that case the board while still vested with rule-making power adopted a regulation affecting future payment of pensions or benefit's to one who had been placed on the pension rolls prior to May 26, 1937. Such are not the facts of the instant cases.
Without further analysis of the many authorities available, we hold that the relators who were placed on the pension rolls prior to May 26, 1937, have vested rights to the monthly payments of pensions here in controversy.
The foregoing should be sufficient to dispose of the issues here involved. However, counsel for the respondents urge with great earnestness that the comprehensive amendment to the pension laws which became effective in 1947 (122 Ohio Laws, 614) changed the theory of pensions and created a new and separate fund which could not be used or drawn upon to satisfy delinquencies which occurred prior to its enactment. At the risk of undue length some comment must be made with respect to that contention.
Our conclusion is that the contention is without merit and this conclusion is reached after a thorough study and review of firemen and police pension fund laws covering more than a half a century. Police and firemen pension laws were on the statute books long before 1902, but in April 1902 the General Assembly repealed all former laws on the subject and passed a comprehensive act covering the entire subject with respect to both firemen and policemen (95 Ohio Laws, 223). • That act authorized the creation of a board of trustees to be known as the Trustees of the Firemen’s Pension Fund and another board of trustees to be *51 known as Trustees of the Police Relief Fund. Each board was to be comprised of six members one of whom should be the chief administrative officer of that particular department. Through many legislative amendments, the size and characteristics of such boards of trustees have been retained, although the method of selection of the members has been changed from time to time.
Under the Act of 1947 (122 Ohio Laws, 614), we still have boards of six members charged with the duty of administering the pension funds. By the Act of 1902 the boards were authorized to make rules and regulations for the distribution of the funds and with respect to the qualifications of those authorized to participate therein. With minor changes through the years as to the necessity of approval of such rules and regulations by some official, this power of control by the boards continued until 1947. By Sections 4612-4 and 4628, General Code, enacted as parts of the Act of 1947, the power to adopt rules and regulations for the management of the funds remained in the boards but the boards were thereby required to disburse the benefits in accordance with the schedule of pensions and benefits provided in the Act of 1947.
The resources constituting the pension funds have always been derived from substantially the same sources, and the 1947 act makes no radical change in that respect. By the Act of 1902 council was authorized to levy a tax of not to exceed three-tenths of a min for the maintenance of each pension fund. If the levy was not made, there was direction for transfer of public monies to the pension funds. There were also provision for payment of certain fines and fees into the pension funds, and authority to the trustees to accept gifts.
In 1929 (113 Ohio Laws, 61 and 64), Sections 4605 and 4621, General Code, were amended, making it *52 mandatory to levy not to exceed three-tenths of a mill but sufficient within that limit “to provide funds for the payment of all pensions.”
The Act of May 1, 1939 (118 Ohio Laws, 283), amended Section 4605 to include specific authority to council to supplement the three-tenths-mill levy by additional funds if necessary. This enactment affected only the firemen’s fund.
By Act of June 1, 1939 (118 Ohio Laws, 661), Section 4621, General Code, which relates to the policemen’s fund was amended so as to include mandatory direction to council to supplement the three-tenths-mill levy if necessary.
Throughout the years from 1902 to 1947, the provisions for accepting gifts and for payment into the pension funds of certain fines, fees and proceeds from certain legal proceedings were retained and expanded so as to increase the income payable to the pension funds. Such provisions were retained in the Act of 1947. By that act, the levy of three-tenths of a mill for the benefit of each pension fund was made mandatory. That act also authorized council to appropriate general funds to each of said pension funds if necessary to meet current relief and pension payments. The only new source of revenue created by the Act of 1947 is that provided for by Section 4631-4, General Code. That section creates a “Local Police and Firemen’s Relief and Pension Fund” in the state treasury out of which payments to each local fund are authorized in amounts of one-tenth of a mill based on the local tax duplicate under certain specified conditions.
Again it is to be noted that in the 1902 act (95 Ohio Laws, 223) provision was made for a uniform voluntary contribution to the pension funds by both firemen and policemen, pursuant to rules to be adopted by the trustees. The same provision was carried into the Act of 1904 (97 Ohio Laws, 241). In 1939, Section 4609, *53 General Code, was amended (118 Ohio Laws, 283, 285), and Section 4625, General Code, was amended (118 Ohio Laws, 729), making mandatory contribution by the policemen and firemen at the rate of two per cent of their annual salaries.
By the Act of 1947, Sections 4609 and 4625, General Code, were amended, making mandatory a contribution of four per cent of the annual salaries of both firemen and policemen and the deduction thereof from their pay. This merely increased the amount but did not change the theory upon which these contributions had been made over the years.
Thus it is seen that throughout the years and under the 1947 act there has been no radical change as to the source of the money which constitutes the pension funds.
Other changes in the pension laws were effected by the Act of 1947 but they are not of controlling importance in these cases.
The important change made by the Act of 1947 was the fixing, by legislation, of definite schedules of benefits and the withdrawal of the power of the trustees to determine eligibility and pension compensation rates. The Act of 1947 merely continued the existence of the firemen’s and policemen’s pension funds, as they had been continued several times previously by amended legislation, and it provided for obviously needed increased money in the funds. It also specifically defined the rights of pensioners to participate in the funds. It did not create new and distinct funds and it did not by terms or implication prevent payment of past delinquencies out of monies accumulated by reason of the added sources of revenue provided for by the.act.
This leaves only the question as to the right of the relators to relief by way of mandamus. As above indicated, there is an absolute obligation upon the re *54 spective boards to order payment of the defaulted pensions here in question, and the relators have a clear legal right to demand “the performance of an act which the law specially enjoins as a duty from an office, trust or station.”
The judgments of the Court of Appeals are affirmed.

Judgments affirmed.

Weygandt, C. J., Hart, Zimmerman, Stewart and Lamneok, JJ., concur.
Taft, J., concurs in paragraphs one, three and four of the syllabus and in the judgment.