THE STATE, EX REL. DOWNING, *v.* JOHNSON ET AL.
THE STATE, EX REL. BARLOW, *v.* JOHNSON ET AL.

(Nos. 183 and 184—Decided June 18, 1956.)

*Mr. Lawrence R. Lyons,* for relators.
*Mr. Frederick J. Buckley,* city solicitor, for respondents.

Ross, P. J. These cases are two separate proceedings in mandamus, instituted in this court, but in each of which is involved an identical question dispositive of the issues involved in each case. The cases have been argued together and will be so considered and decided.

The first case involves the right of a retired officer in the police department of the city of Wilmington to continue to receive a pension as originally awarded him by the Trustees of the Police Relief Fund, and later reduced by such trustees, and to recover through the writ of mandamus payment of pension moneys of which he has been illegally deprived through action of respondents.

The second case involves the similar status of a member of the fire department of such city, whose pension was similarly reduced by the Trustees of the Firemen's Pension Fund.

The facts in each case are presented by stipulation. The stipulation applying to the first case, so far as pertinent to the issues, is as follows:

"That plaintiff-relator, Everett Downing, had over 25 years of service prior to his retirement on the 31st day of December, 1949.

"That plaintiff-relator, Everett Downing, did exercise an election pursuant to G. C. 4631-1 to receive benefits and pension from the Police Relief Fund of the City of Wilmington, Ohio, in force on the 1st day of April, 1947, and that on November 24, 1947, said Police Pension Board did in their minutes of that date place said relator permanently on record.

"That on the 29th day of March, 1955, the Bureau of Inspection and Supervision of Public Offices of the Department of Auditor of State of Ohio made a finding for recovery against relator and in favor of the city of Wilmington Police Pension Fund, said finding being based upon alleged overpayment of pension to relator by reason of the original computation of the same at 60% of the monthly salary being drawn by relator at the time of retirement, rather than at 60% of the average monthly salary drawn by relator during his period of employment with the city."

Similar appropriate statements appear in the stipulation applicable to the second case.

498

At the time of the retirement of the relators in 1949 and 1953, respectively, they had each exercised options to have their pensions governed by the statute law of Ohio in operation prior to 1947, when the procedure applicable to pensions of police officers and firemen was radically changed. Prior to such date, pensions were controlled by trustees of such pension funds operating under municipal authority. After 1947, such control and authority was taken over by the state of Ohio. However, under the later law, members of the police and fire departments were given the option to remain under the operation of the original procedure, controlled by municipal trustees, or submit to the later statutory control. (Sections 4631-1, 4614-1, General Code.) As stated before, in each case the relator exercised an option to remain under the control of municipal trustees. The applicable statutes, therefore, are Sections 4616 *et seq.,* and 4600 *et seq.,* General Code. Under these sections of the General Code, such trustees of pension funds, operating in municipalities, were given the power to adopt rules and regulations governing the distribution of such funds and the qualifications of those entitled to participate in the funds.

The Trustees of the Police Relief Fund of the City of Wilmington, pursuant to the power vested in them by Section 4628, General Code (97 Ohio Laws, 248, Section 2[*f*], 113 Ohio Laws, 64, 66), adopted the following rule:

"Section 8 of the regulations is as follows, to wit:

"Section 8. Any member of the said division of police, after twenty years (20) of service therein, may, upon his written application to the director of public safety, be retired from all service in the said division of police, and the said board of trustees, upon such member being so retired, shall authorize the payment to such retired member, monthly from the said pension fund, during the life of such retired member, a pension, the amount of which shall be computed as a percentage of the rate of average monthly salary for previous service, provided however, the salary upon which said computation is based, shall, in no event, be in an amount less than the prevailing salary scale as of December 1, 1938: the said percentage to be computed in accordance with the number of years of service of such member pursuant to the following schedule:

"For 20 years or more, but less than 21 years of service, 50%.
"For 21 years or more, but less than 22 years of service, 52%.
"For 22 years or more, but less than 23 years of service, 54%.
"For 23 years or more, but less than 24 years of service, 56%.
"For 24 years or more, but less than 25 years of service, 58%.
"For 25 years or more years of service, 60%.
"(Adopted 12/29/38.)"

A similar rule was adopted by the Trustees of the Firemen's Pension Fund of the City of Wilmington, under the provisions of Section 4612, General Code.

The relator in the first case was awarded a pension, as a retired police officer, in 1949 of $135 per month, and in the second case, the retired fireman was awarded a. pension, in 1953, of $162.50 per month. Each was paid such respective pension until April 11, 1955, when the trustees reduced the pension of the retired police officer to $87 per month, and that of the retired fireman to $81.77 per month.

The action of the trustees in each case was predicated on the finding of the Bureau of Inspection and Supervision of Public Offices of the Department of the Auditor of the State of Ohio, requiring recovery against relator, and in favor of the Wilmington police (and firemen's) pension fund of $2,976 in the case of the retired police officer, and $1,937.52 in the case of the retired fireman.

Such findings were stated to be based upon an erroneous computation of pension rights by the trustees of the pension fund, predicated on the salary at the time of retirement, when such computation should have been based upon the average monthly salary drawn by the relators during their entire period of employment with the city.

Although it does not appear in the stipulation of facts, it is conceded and agreed by both parties to these proceedings that, in the case of the retired police officer, computation was made on his average monthly salary for 24 months previous to retirement, and, in the case of the retired fireman, the computation was for 14 months previous to his retirement.

Briefly stated, the contention of the relators is that the trustees in each case had the right to take the later periods of

service as "the average monthly salary for previous service" as provided for in the rule adopted by the trustees, hereinbefore quoted. On the other hand, the respondents claim that under the rule of the bureau, they are required to construe the language quoted as requiring computation based on *all* previous service. It is apparent that the trustees did base the pensions on "previous service," and, also, that the rule does not state *all* previous service.

In *State, ex rel. Schoedinger,* v. *Lentz,* 132 Ohio St., 50, at page 57, 5 N. E. (2d), 167, it is stated:

"Pension provisions must receive liberal interpretation, and ambiguities and uncertainties must be resolved in favor of those to be benefited thereunder.

" 'Like other pension laws, pension acts applicable to members of the police force will be liberally construed.' 43 Corpus Juris, 813, Section 1408(b); *O'Dea* v. *Cook,* 176 Cal., 659, 169 P., 366."

Manifestly, also, the trustees who adopted the rule involved have a right in the exercise of sound discretion to construe the rule they adopted, and govern their action by the intention they know was intended, providing the language used in the rule is reasonably susceptible of the construction originally given it by the trustees when awarding the pensions to the relators. Certainly, a liberal attitude toward the original action of the board, and the construction of the rule, will require such conclusion.

The relators acquired a vested right in the pensions awarded, unless such awards were clearly in violation of law.

Section 4628-1, General Code, provides:

"The granting of a pension to any person hereafter pursuant to the rules adopted by the trustees shall operate to vest a right in such person, so long as he shall remain the beneficiary of such pension fund, to receive such pension at the rate so fixed at the time of granting such pension."

To the same effect is Section 4612-1, General Code.

The only reason the trustees receded from their original construction of their own rule was because of the duress imposed by the bureau of inspection.

If their original action was lawful, then the sections of the statute protecting the vested rights of the relators apply.

No reason appears why such original construction of the trustees was not justified and fully within their power, in the exercise of sound discretion. They did base their computation on "previous service." Had they intended when writing the rule to include *all* previous service, they would have so written. The original action of the trustees indicates they did not intend *all* previous service, and the bureau of inspection has no right or power to say they did mean *all* previous service, in view of the construction placed on the rule by the trustees.

Giving the relators the benefit of the liberal interpretation rule and the statutes insuring a vested right in the pension, and finding that no one can construe the meaning of a rule adopted by the trustees better than the trustees themselves and that, by their original action in awarding the pensions, they did construe it adverse to the contentions of the bureau of inspection and the respondents, we conclude that the writs must be granted, reinstating the original pensions and requiring payment of the sums illegally withheld.

*Writs allowed.*

HILDEBRANT and MATTHEWS, JJ., concur.