44 N.J. Super. 401 (1957)
130 A.2d 657
FRANCES McHUGH, PLAINTIFF-APPELLANT,
v.
COUNTY OF BURLINGTON, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1957.
Decided April 1, 1957.
*402 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. James M. Davis, Jr., argued the cause for the plaintiff-appellant (Messrs. Powell & Davis, attorneys).
Mr. William H. Wells argued the cause for the defendant-respondent.
*403 The opinion of the court was delivered by FREUND, J.A.D.
The plaintiff, Frances McHugh, the widow of John F. McHugh, who died on September 24, 1953, instituted the present action in lieu of the prerogative writ of mandamus to compel the defendant to pay her a pension.
The sole issue before the trial court, and also before us, is whether as the result of the death of her husband, a county detective of the County of Burlington, the plaintiff is entitled to a pension under the applicable statute, R.S. 43:10-25, which provides that:
"The widow of any county detective who shall lose his life in the performance of his duty or shall die from natural causes, shall receive a pension so long as she shall remain unmarried, equal to one-half of the amount of the annual salary of such county detective at the time of his death * * *."
The trial court, sitting without a jury, dismissed the action on the ground that the plaintiff, who has not remarried, did not sustain the burden of proving that her husband's death was either (1) in the performance of his duty, or (2) the result of natural causes.
The facts are these: Several days prior to his death McHugh requested permission from his superior, Chief of Detectives Clinton Zeller, to be relieved of duty at noon on September 23, 1953 to go fishing. On the morning of that day he drove to his office in the Burlington County Court House at Mt. Holly in a county-owned car assigned to him for transportation in connection with his official work, and parked it in a parking lot in the rear of the Elks Home adjoining the Court House. At noon he left with friends in their car for the fishing party. When the group returned to Mt. Holly about 11 P.M. they separated and only McHugh went into the Elks Home. Zeller testified that he saw McHugh there at that time, that McHugh ordered a glass of beer, but did not drink it as he said he had a headache; further, that his color was not good. After about 15 minutes McHugh left for home in the county car which had been parked in *404 the parking lot. On his way, about five or six blocks from the parking area, he was involved in a head-on collision with another car. By stipulation it was agreed that Henry Jasinski, the driver of the other car, would, if called, testify that he saw McHugh's car approaching him and that it suddenly and without warning swerved first to the right and then to the left, and then collided with his car. McHugh was removed to the Burlington County Hospital where, upon arrival at 12:05 A.M. on September 24, 1953, he was pronounced dead.
The death certificate by the county coroner, Robert C. Smires, received in evidence, states in answer to the question "cause of death"  "concussion of the brain  fracture of skull  auto accident." It also shows an "X" in a box on the printed form indicating that the accident occurred "not while at work." The information on the death certificate was supplied to the coroner in his investigation of the accident by the hospital physician among others. The record discloses that when McHugh arrived at the hospital there was blood running from his right ear and there were visible marks of injury on the right side of his head.
By stipulation, medical evidence was introduced to show that in 1947 McHugh had been treated for a myocardial infarction which was likely to recur. There was testimony that although he was usually conversational and jovial, on the fishing trip he was glum and sullen, held his head in his hands, and spoke in a rather curt manner. It was further stipulated that if decedent's physician were called, he would testify that this behavior on the day preceding his death might be accounted for by the decedent's "subconscious premonition of * * * the heart attack that he probably had just before this automobile accident took place."
The plaintiff argues that McHugh lost his life "in the performance of his duty" since the nature of his employment was such that he was on duty at all times, in that he was always subject to call and that his driving home in the county automobile constituted performance of his duty in the added sense that he was transporting county property *405 to a place where it would be available in case of an immediate call to duty. Chief Zeller testified that he never considered himself or his men as off duty: that the "tour of duty would run 24 hours a day * * * seven days a week, if necessary," and that McHugh was always subject to call. He further testified that normally the County Detectives' Office is open from 9 A.M. to 4:30 P.M., so that when he gave McHugh the afternoon off McHugh was, although subject to call, off duty until the following morning. He said that when he saw McHugh at the Elks Home late that night he did not give him any duty assignment because "I didn't have any specific instructions to give him." Thus, even though it be conceded that McHugh used the county car in driving to and from any assignment and was always on call, it is obvious that he was not on duty when the accident occurred. He was driving the county car in order to get himself home, rather than, as plaintiff argues, to get the car home. Compare Maitland v. Board of Police Com'rs of City of Garfield, 93 N.J.L. 150 (E. & A. 1919).
The plaintiff relies upon Angersbach v. South River Police Pension Comm., 122 N.J.L. 1 (Sup. Ct. 1939), which states that a pension statute should be construed liberally to effect the legislative intent. We agree, but nevertheless statutory construction must necessarily be circumscribed by the legislative language. Cf. State ex rel. Schoedinger v. Lentz, 132 Ohio St. 50, 5 N.E.2d 167 (Sup. Ct. 1936). The plaintiff also relies upon Ward v. Keenan, 3 N.J. 298 (1949), and Borough of Jamesburg v. Hubbs, 18 N.J. Super. 5 (App. Div. 1952), but those were discharge proceedings involving the conduct of police officers on leave of absence, and so are not pertinent here.
The plaintiff further argues that the judgment of dismissal entered in a prior proceeding in the Workmen's Compensation Division is not determinative of the issues before us. The Division held that McHugh's death did not arise out of and in the course of his employment. The deputy director stated that "the mere fact that he was taking his car back from where he had left it before being *406 excused from his duty is not a resumption in the performance of his duties." While the judgment of the Division is final and dispositive of all the essential findings it embraces, New Amsterdam Casualty Co. v. Popovich, 18 N.J. 218 (1955), and cannot be elsewhere attacked, Scott, "Collateral Estoppel by Judgment," 56 Harv. L. Rev. 1 (1942); "Developments in the Law of Res Judicata," 65 Harv. L. Rev. 818, 840 (1952), this finding does not purport to be, nor is it, a determination that McHugh lost his life within the performance of his duty under R.S. 43:10-25; Davis, Administrative Law, § 173, at pp. 577-81 (1951), which is the issue before us. Hence, while the ruling of the Workmen's Compensation division remains a valid and subsisting judgment, it is in no sense dispositive of the issues raised in the trial court, nor here on appeal. However, in our opinion, the trial judge's ruling was not predicated upon the judgment of the Division, but upon all the evidence before him.
As to whether or not McHugh died of "natural causes," the plaintiff argues that the phrase is to be liberally construed and to include all causes "not artificial" and, hence, includes accidental death. While it is true that the term "natural," standing alone, connotes "not artificial," the phrase "death by natural causes" is generally used in contradistinction to death by accident, foul play, or the like. In Slevin v. Board of Police Pension Fund Com'rs, 123 Cal. 130, 55 P. 785, 786, 44 L.R.A. 114 (Sup. Ct. 1898), the phrase "`die from natural causes'" was construed to include those who "did not die through external violence or through human agency." Also, "natural death" has been defined as a "natural cessation of life * * * death which occurs by unassisted operation of natural causes, as distinguished from a violent death or one caused or accelerated by the interference of human agency." Bouvier's Law Dictionary; Ballantine's Law Dictionary (1948 ed.). In our opinion, death from natural causes means death without the intervening causation of accidental or intentional injury. Had the Legislature intended a meaning other than the one *407 commonly used, it could have used the expression "shall die from any cause," as it did in R.S. 43:10-52, or "shall die from causes other than injuries received in the performance of his duty," as in R.S. 43:10-109.
The plaintiff contends that McHugh's death did not result from the accident, but from a heart attack which occurred just prior to the accident. The evidence discloses that in 1947 McHugh suffered a heart attack, and that in 1953 he suffered a hemorrhage which kept him from his duties for two months. It was stipulated that McHugh had been treated for a heart condition and that there was a reasonable probability of a recurrence. The contention, however, that McHugh died, preceding the accident, of natural causes, i.e., a heart attack, is purely speculative in view of the death certificate which states as the cause of death "concussion of the brain  skull fracture." The burden of proof was upon the plaintiff to submit medical evidence in contravention of the facts stated in the death certificate and this she failed to do.
N.J.S. 2A:82-12 provides that any certificate of death made by any person according to law "shall be received as prima facie evidence of the facts therein stated in all courts and places." Here, the death certificate was made by the coroner. R.S. 26:6-8. Aitken v. John Hancock Mutual Life Ins. Co., 124 N.J.L. 58 (E. & A. 1939). Although the plaintiff seeks to detract from the weight to be given the cause of death shown on the death certificate on the ground that no autopsy was made and that decedent's heart was not examined, these factors are not sufficient to destroy the authoritative weight customarily given to a death certificate duly made by an authorized person.
The evidence supports the trial court's finding that McHugh's death was neither "in the performance of his duty" or "from natural causes." Affirmed.