THE STATE, EX REL. BRUNSON, APPELLANT, *v.* BEDNER ET AL., APPELLEES.

(No. 71-55—Decided June 8, 1971.)

*Mr. Morris G. Sullivan,* for appellant.

*Mr. William J. Brown,* Attorney General, and *Mr. F. Richard Heath,* for appellees.

HOLMES, J. This matter involves an appeal of a judgment of the Common Pleas Court of Franklin County denying the relator's petition seeking a writ of mandamus against the board of trustees of the police and firemen's disability and pension fund of Ohio.

The stipulation of facts presents us with the following pertinent data for this appeal.

Relator is a former employee of the division of police of the city of Cincinnati, Ohio, and while so employed suffered certain injuries which resulted in a partial disability and in his being separated from his employment.

He made application to the respondent board of trustees, an appellee herein, for disability benefits. At the request of respondents, relator was examined by two physicians, one of whom found that relator had a permanent partial disability of 10 percent. The other physician found the relators over-all disability to be "between 20 percent and 43 percent."

On the basis of such reports, the respondents awarded the relator the sum of $150 per month for partial disability, pursuant to R. C 742.37(C) (3).

Relator now seeks a writ of mandamus ordering the respondents to grant him annual disability benefits until death in an amount equal to 66 percent of his annual salary for the last year he was in the service of the Cincinnati police force.

It might be noted at the outset that relator's second amended petition states: "the action of this Board of Trustees in not awarding him total disability benefit was void, illegal, contrary to law, arbitrary, unreasonable, capricious, and unjust." Parenthetically, it might be noted that there was no allegation that the act which relator seeks to have performed is an act which the law specifically enjoins as a duty of these respondents.

The section of law under which this relator was awarded partial disability payments was R. C. 742.37(C) (3), which reads as follows:

"(3) A member of the fund who is partially disabled as the result of the performance of his official duties as a member of a police or fire department of a municipal corporation or a fire department of a township, and such disability prevents him from performing those duties and impairs his earning capacity, shall be paid monthly disability benefits in an amount to be fixed by the board. The board may increase or decrease such monthly benefits whenever the impairment of the member's earning capacity warrants an increase or decrease. * * * "

Under this section, the respondents are given wide discretionary authority to make awards for disabilities, and to increase or decrease such awards dependent upon the member's earning capacity. The maximum allowable

award under this subsection, unless the member has 25 years of service, is 50 percent of the member's average monthly salary for his five highest years of employment. A member may only be awarded the maximum disability benefits of 66 percent of his annual salary if he is permanently and totally disabled, pursuant to R. C. 742.37(C) (2). There was no claim in this case that the relator was permanently and totally disabled, so, on this ground alone, the maximum benefit would not be available.

In any event, this court should not interfere with the discretionary duties of these respondents and should not substitute our judgment for that of the board.

It seems to be well established that a court should not interfere in an action in mandamus with the exercise of discretion by the members of governmental agencies. Respondents aptly quote from *State, ex rel. Marshall,* v. *Keller, Admr.* (1968), 15 Ohio St. 2d 203, as follows:

"What appellee is now seeking through this action in mandamus is to compel the courts of this state to act as a jury and to review and weigh medical evidence. Mandamus is not a substitute for appeal, nor can it be used to create an appeal in cases where an appeal is not provided by law. Before a writ may issue there must be a clear legal duty on respondent to act, and, where the evidence is conflicting, a court cannot substitute its judgment for that of the commission and find that the commission abused its discretion."

This court followed such holding in the unreported case of *State, ex rel. Leroy Miles,* v. *Industrial Commission,* No. 9973, March 3, 1971.

We see no clear legal duty on the part of the respondents, pursuant to R. C. 742.37(C) (3), to award the relator 66 percent disability, rather than the 25 percent as actually awarded.

However, the relator argues that he has a "vested right" in such disability benefits, and that the trustees have a clear legal duty to award disability benefits to him only on the basis of his impaired earning capacity as a police officer at the rank and pay existent at the time of the injury.

Conversely, relator argues that the board had no authority to award disability benefits to him on the basis of need, as he asserts has occurred in the instant case. This latter assertion is based upon the fact that the award of $150 per month, as made by the board, when added to his current earnings with the Civil Rights Commission, totals the sum he previously earned as a police officer at the time of his separation from duty.

A brief review of the legislation and case law surrounding the philosophy of granting awards for disability by the board of trustees of the police and firemen's disability and pension fund is necessary in deciding this matter.

The current sections of law establishing and controlling the police and firemen's disability and pension fund, and contained within R. C. Chapter 742, became effective on November 5, 1965. Immediately prior to the enactment of Chapter 742, the police relief and pension fund had been provided for within R. C. Chapter 741. The rules and regulations for the management of the fund and for the disbursements of benefits and pensions was contained in R. C. 741.49. Subsection (C) of such section is pertinent to the consideration of the matter before us, and is as follows:

"(C) A member of the fund who is partially disabled as a result of the performance of his official duties as a member of the department and such disability prevents him from performing those duties and impairs his earning capacity, shall be paid monthly disability benefits in an amount to be fixed by the board. The board may increase or decrease such monthly benefits whenever the impairment in the member's earning capacity warrants an increase or decrease * * * ."

R. C. 741.46 created a so-called "vested right" in a beneficiary to proceeds in a police pension fund, as follows:

"The granting of a pension to any person pursuant to the rules adopted by the board of trustees of the police relief and pension fund vests a right in such person, so long as he remains the beneficiary of such fund, to receive

such pension at the rate fixed at the time of granting the pension.''

In *State, ex rel. Cline,* v. *Miller* (1938), 134 Ohio St. 445, the Supreme Court held that, under R. C. 741.46, the granting of a pension, pursuant to the rules adopted by the trustees, operates to vest a right to receive such pension at the rate so fixed at the time of granting such pension. In like manner, see *State, ex rel. Downing,* v. *Johnson* (1956), 101 Ohio App. 496.

With the obvious purpose of clarifying what misunderstanding there may be as to the applicability of R. C. 741.- 46 to disability benefits, as distinguished from pension funds, the Ohio Supreme Court held in *State, ex rel. Boehnlein,* v. *Poland* (1965), 1 Ohio St. 2d 179, that this section did not grant a vested right to the beneficiary of ''monthly disability benefits'' received pursuant to paragraph (C) of R. C. 741.49.

Following *State, ex rel. Boehnlein,* v. *Poland, supra,* the new Chapter 742 was enacted, as heretofore mentioned.

The manner of making disability benefit payments was set forth in R. C. 742.37(C) (3) in essentially the same manner as they had been in the prior R. C. 741.49(C). The applicable portion of subsection (C) (3) is as follows:

''(3) A member of the fund who is partially disabled as the result of the performance of his official duties as a member of a police or fire department of a municipal corporation or a fire department of a township, and such disability prevents him from performing those duties and impairs his earning capacity, shall be paid monthly disability benefits in an amount to be fixed by the board. The board may increase or decrease such monthly benefits whenever the impairment of the member's earning capacity warrants an increase or decrease * * *.''

The relator, in his brief, proceeds to point out that the legislature enacted a new ''vested rights'' section within Chapter 742, and that such new section extended such ''vested rights'' to disability benefits as the law had previously granted it to pension funds.

R. C. 742.46, which provides for the rights of a beneficiary to benefits or pension, is as follows:

"The granting of a benefit or pension to any person under sections 742.01 to 742.49, inclusive, of the Revised Code, vests a right in such person to obtain and receive the amount of such benefit or pension granted to him subject to sections 742.01 to 742.49, inclusive, of the Revised Code. Such right may be enforced by an action in mandamus instituted in the court of common pleas in the county in which the person granted such benefit or pension resides."

The relator states that the last paragraph of R. C. 742.37(C) (3), which enables the board to raise or lower benefits, is repugnant to the wording of the new vested rights section and "is meaningless when we read what the Supreme Court of Ohio said a vested right means in other cases." He claims that the legislature, in adopting this new section, meant to change the holding of the *Poland* case, and all of the existing rules of the board relative to the manner in which disability benefits were to be calculated.

More particularly, the relator argues that the legislature, in enacting such section, intended to abrogate the language of the Supreme Court in *Poland*, to the effect that the legislative history of the police relief fund evidences the fact that the concept upon which the granting of disability benefits was based has been one of need to be determined by the board.

Further, the relator argues that the legislature meant to put the award of disability benefits on the same basis as awards in Industrial Commission cases, and that the definition of "impairment of earning capacity" used in Industrial Commission cases and tort cases must now, under Chapter 742, apply to disability benefits.

Stated in another manner, the relator is arguing that the words "earning capacity" relate solely to his earning capacity as a patrolman, and that the amounts he has been earning subsequently in his job with the Civil Rights Commission should not be considered in determining "earning capacity."

These arguments as advanced by relator are all quite intriguing, but upon close surveillance of the sections involved, we are unable to agree with him.

In the first instance, the intent of the legislature throughout the years, as it relates to the discretion of the board in awarding benefits, was expressed by the Supreme Court in *State, ex rel., v. Poland,* as follows, at page 184:

"From the original enactment of the statute to the present act, the discretion of the board of trustees to establish and to increase and decrease the amount of disability payments has been retained. 95 Ohio Laws (1902) 223, 226, 229; 97 Ohio Laws (1904) 241, 245, 248; 113 Ohio Laws (1929) 64, 66; 122 Ohio Laws (1947) 614, 624; 123 Ohio Laws (1949) 815; 125 Ohio Laws (1953) 61, 62; 127 Ohio Laws (1957) 515; 128 Ohio Laws (1959) 635, 638; 129 Ohio Laws (1961) 582, 647; 129 Ohio Laws (1961) 1342, 1346."

A reference to R. C. 742.37(C) (3) will readily show that the discretionary rights of the board to vary amounts of disability payments according to the extent of impairment of the members' earning capacity remain in the current code.

There is nothing in the current language of this section which would lead in any other direction than that espoused in *State, ex rel., v. Poland, supra,* which is "that the original and continuing concept upon which the granting of disability benefits was based has been one of need, to be determined in the discretion of the board of trustees."

We hold that the discretionary authority granted to the board to make a later determination of a beneficiary's need which may result in a varying of the members' benefits is not prohibited by the provisions of R. C. 742.46.

This position may be strengthened by a further inspection of the language of R. C. 742.46. It will be noted that the so-called vested rights in a benefit or a pension which are granted to members are subject to other provisions as contained within Chapter 742.

The language of the section with the appropriate emphasis is, in part, as follows:

"The granting of a benefit or pension to any person

under sections 742.01 to 742.49, inclusive, of the Revised Code, vests a right in such person to obtain and receive the amount of such benefit or pension granted to him *subject to sections 742.01 to 742.49, inclusive, of the Revised Code.*"

Under this section, the board may from time to time, and pursuant to regulation, review the impairment of the members' earning capacity and either increase or decrease any monthly benefits based upon its findings, providing that such determination be a reasonable one.

In the instant case, we are not confronted with facts indicating an increase or decrease in disability benefits, but, rather, those showing a disagreement with an original award, so, if we had wished to decide this matter on a more limited basis, we could have concluded that the vested rights section and arguments thereunder would in fact have no application.

However, we wish to decide this matter on the broader base and discuss R. C. 742.46 as it relates to R. C. 742.37(C) (3), and make our observations that the latter is not in conflict with the former.

There were various medical reports in the instant matter indicating that the relator was disabled by varying percentages.

The board, pursuant to the statutes, had the discretionary authority to make its determination of the amount of benefits to be granted, based upon the record before it. Such determination should not be reversed in the absence of a gross abuse of such discretion.

As stated by this court in the unreported case of *State, ex rel. Johnson,* v. *Industrial Commission,* Case No. 9947, April 20, 1971:

"This court has held on previous occasions, as has the Supreme Court of Ohio, that a writ of mandamus will not issue unless a relator established a 'clear' abuse of discretion by the commission. (For example, see *State, ex rel. Coen,* v. *Industrial Commission of Ohio* [1933], 126 Ohio St. 550.) Other decisions refer to a 'gross' abuse of discretion as permitting the very limited use of the special remedy."

We find no such abuse in this matter.

The judgment of the Common Pleas Court of Franklin County is hereby affirmed.

*Judgment affirmed.*

TROOP, P. J., and WHITESIDE, J., concur.